Chief Justice Boyle
delivered the opinion of the court.
John Jones of New-Kent county, in Virginia, by his last will devised to his wife, for life, sundry Slaves, and the remainder over in fee to three of her children by a former husband; namely, Benedict, Nathaniel and Elizabeth Bacon; but to the latter he bequeuthed a negro girl, Marcia, over and above an equal part with the others. After the death of Jones, Mrs. Jones intermarried with Stanly P. *49 Gower, who, in consideration of 142, executed to Benedict Crump, her father, a bill of sale' fbr the slaves devised as before stated, with a view of securing them from being taken to satisfy Gower’s debts. These debts being otherwise sa* tisfied, Gower reclaimed the slaves; but Crump, for somé cause, refused to give them up. About this time Edmund Bacon, a brother of the devisees in remainder, arrived in Virginia from this state, where he resided, and manifested a solicitude to bring with him to this state his sister Elizabeth; but her friends thought it would be imprudent for her to remove to such a distance without the property she had in expectation. To remove this objection, he determined to bring about a compromise between Gower and Crump; and on application to the latter, lie agreed to restore the slaves, provided Gower would consent that they should ba divided amongst those entitled, after the death of his wife, and the forty-two pounds for which he liad passed his bond, should be satisfied. Edmund Bacon discharged Crump’s bond, and took a transfer of the slaves to himself; and having procured himself to be appointed guardian to Nathaniel and Elizabeth, who were under the age of twenty-one, he for them, and Benedict the other devisee in remainder, for himself, agreed with Gower to make an equal distribution of the slaves between him and them. A division was accordingly made by commissioners appointed bv the county court, and there was alloted to Elizabeth for her share, (besides Marcia,) Henry and Jim, who were received by Edmund Bacon, as guardian for Elizabeth.— These slaves, together with Elizabeth, he brought to this country with him. Some timé after her removal to this state, she intermarried with John Bacon, against the consent of Edmund her guardian, and she, as well as her husband, being under the age of twenty-one, they procured Paul Christian to be appointed their guardian, who shortly demanded of Edmund the slaves which had been alloted to Elizabeth, but Edmund refused to deliver them, asserting a right to them; but at the same time refusing to shew the evidence of his claim. Christian thereupon instituted suit for the recovery of Marcia and Henry, Jim having in the mean timé died. Pending this suit, John Bacon, Under an authority from his guardian, entered into a compromise with Edmund, whereby he relinquished to Edmund his claim to Henry, and Edmund gave up to him Marcia*
If a writing •Occident ai'or mistake,’ so drawn áá not *°ue the parties, chancery will • knee tSleV piain It! — 1st Washing 34, Kp1 58 Jpear-son vs Hook-et; lb. 216, vímVwa'h" 170, Baird vs Blacgrove.
John having some time afterwards arrived at full age, he and his wife filed this bill to recover Henry and compensation for his hire, alledging that the compromise was void, not only on the ground of his being an infant, » but because of his ignorance of the true state of the title.
Edmund, in his answer, insists, that he had a title to both Marcia and Henry for the lift of Mrs. Gower, who was, at the time of the compromise, and still is, living. He denies any fraud in the compromise, and contends that it is conclusive upon the complainants. The suit having abated by the death of Edmund, was renewed against his administrator, and having come on to a final hearing, the court below pronounced a decree in favor of the complainants. from which this appeal has been taken.
The first enquiry which naturally presents itself is, whether, independent of the compromise, the complainants would have been entitled to the slaves in controversy?
In opposition to their right, the hill of sale to Crump, and the transfer by him to Edmund Bacon, are relied on as conclusive.
There is no doubt that Gower might dispose of the slave# for the life of his wife, and as Crump became the purchaser of that interest, he might unquestionably transfer it to Edmund Bacon in his own right; but judging from the pa-rol evidence in the cause, it is clear that it was not the intention of the parties that the transfer from Crump to Edmond Bacon, should operate to vest the right in the latter f°rMsown use, but for the use of those entitled to the remainder in the slaves. But it is contended that as the transfer ivas made to him without being expressed to be in H°Pevty sHves, by construction of law, vesis 'n him'for his own use, and that parol evidence ⅛ inadmissible to vary the construction which the instrument w^ich the transfer was made will bear. Such, rlo ^ou'ot? the legal construction of the transfer in question, and such the rule in general with respect to the inadmissi-of parol evidence to vary the construction of an in-strarnenl ⅛ writing. But where the instrument, either.br fraud or by mistake, does not. comport with the true intention of the parties, the general rule does not apply, and so stWmS *s evidence in this case, that the transfer from Crump to Edmund Bacon, was intended not for his own; use, but in trust for the devisees that it is impossible to re- *51 gist the conviction, that the instrument was drawn without expressing such intention, through inadvertance or But admitting the transfer to vest the property of the slaves in Edmund Bacon, he might, nevertheless, pass the property in the slaves to the devisees without writing, for slaves may be conveyed as well by parol as by writing, and the subsequent agreement by Gower, whereby he became entitled to the remainder of a part of the slaves by giving up his claim to the life estate in the residue to the other devisees, is certainly sufficient to vest the right of immediate property in them. That it was the intention of Edmund Bacon, that the right of property should so vest in them, is evinced, not only by the nature and terms of the agreement, but by his receiving the part allotted to Eliza» beth as her guardian, and ever afterwards until her marriage with the complainant John, acknowledging the slaves so received to be her property, and by giving up to the other devisees their part without making any pretence of claim. We cannot, therefore, doubt, that independent of the compromise of the former suit, the complainants would have been entitled to the slave in controversy. The next enquiry is, whether that compromise was entered into under circumstances which would vitiate it in the contemplation of a court of equity. We do not deem it material to decide whether or not the infancy of the complainant John, would of itself be a substantial ground for avoiding the compromise, because we are clearly of opinion, that it ought to be set aside on the score of fraud. It was evidently fraudulent in Edmund, especially in the relation in which he stood to the complainants, to assert a right to the slaves, when, at the same time, he must have known that he had no right; ,and it is positively proven, that John’s guardian, in whose name the compromise was made, utterly ignorant of the true state of the title, and as, too, it is entirely probable, that John himself, as well from his infancy as from the remoteness of his situation from the evidence of his title, could not have been acquainted with all the circumstances in relation to his right, we cannot hesitate to pronounce that the compromise was unfairly obtained.
⅛ rema.nder, purchase in e(ny for tj,¿ benefit of all p ^Oculares* tate in trust for iri er‘
A compra, iyi^™ant*oF his rights, "⅛1 be a-Lansdownvs. Lansdown, Mosely, 36⅛ p^u^Vez! Gnffi h vs Trapweli, V 64^*-i^sbovirfe' 3 P. Wms.3i(j;
As to the details of the decree of the court below, to which some objection was made in argument, it is sufficient to remark, that though the mode adopted by that court to arrive at tire amount decreed, may vat. oerhaps, *52 be strictly correct, yet we are of opinion that the amount js n(?t greater than it ought to be, and that the appellant has, therefore, no just cause to complain of the decree in that respect.
Hardin for appellant, Bibb and Talbot for appellee.
Tiie decree affirmed with costs, and damages upon the sum decreed by the court below.