### BROWN v. GOSSER.

Court of Appeals of Kentucky.

March 27, 1953.

As Modified on Denial of Rehearing
Nov. 20, 1953.

Bell, Stagner & Orr, Bowling Green, for appellant.

Milliken & Milliken, Hines & Hines, Bowling Green, for appellee.

COMBS, Justice.

The question in this case is whether a wife may maintain against her husband an action for a tort committed against her person prior to marriage, her suit having been commenced prior to marriage.

The plaintiff, Mary Gosser, was injured in an automobile driven by her prospective husband in May, 1950. Suit was filed the following July 14 and summons was served on the defendant the same day. The parties were married two or three hours later and were living together as husband and wife at the time of trial. The jury returned a verdict for plaintiff in the amount of $1300 and from the resulting judgment the defendant appeals.

The record includes a lucid opinion by Judge John B. Rodes, who tried the case, in which he concludes the judgment may be sustained on either of two grounds: 1. Plaintiff has authority under the Married Woman's Act of 1894, KRS 404.020, and Civil Code of Practice, § 34, to sue her husband for personal injuries caused by his negligence. 2. Regardless of the correctness of ground (1), plaintiff's cause of action became fixed at the time of her injury and has existed since that time as a right of property which was not extinguished by reason of her marriage to the defendant.

Judge Rodes presents a logical and persuasive argument that the General Assembly, in authorizing a married woman "to sue and be sued as a single woman," intended to permit her to sue her husband in the same manner and for the same reasons she might sue any other person. It is the prevailing view, however, that neither spouse may maintain an action against the other for injuries resulting from negligence. 41 C.J.S., Husband and Wife, § 396, page 880; 27 Am.Jur., Husband & Wife, § 589; 6 A.L.R. 1041; 29 A.L.R. 1482; 33 A.L.R. 1406; 89 A.L.R. 118; 160 A.L.R. 1406, at 1412; Prosser on Torts, § 99, page 902; Furstenburg v. Furstenburg, 1927, 152 Md. 247, 136 A. 534; Woltman v. Woltman, 1922, 153 Minn. 217, 189 N.W. 1022; Austin v. Austin, 1924, 136 Miss. 61, 100 So. 591, 33 A.L.R. 1388; Blickenstaff v. Blickenstaff, 1929, 89 Ind.App. 529, 167 N. E. 146; Harvey v. Harvey, 1927, 239 Mich. 142, 214 N.W. 305. This appears to be the majority rule even where, as here, the injury occurred and the suit was filed prior to marriage. Prosser on Torts, § 99, page 902; Newton v. Weber, 1922, 119 Misc. 240, 196 N.Y.S. 113; Buckeye v. Buckeye, 1931, 203 Wis. 248, 234 N.W. 342; Scales v. Scales, 1934, 168 Miss. 439, 151 So. 551; Patenaude v. Patenaude, 1935, 195 Minn.

523, 263 N.W. 546; Spector v. Weisman, 1930, 59 App.D.C. 280, 40 F.2d 792.

But the Courts in a minority of the states hold that since the enactment of the various married women's statutes, one spouse may sue the other for tort. Prosser on Torts, § 99, page 904; Brown v. Brown, 1914, 88 Conn. 42, 89 A. 889, 52 L.R.A.,N.S., 185; Johnson v. Johnson, 1917, 201 Ala. 41, 77 So. 335, 6 A.L.R. 1031; Fiedler v. Fiedler, 1914, 42 Okl. 124, 140 P. 1022, 52 L.R.A.,N.S., 189; Prosser v. Prosser, 1922, 114 S.C. 45, 102 S.E. 787; Crowell v. Crowell, 1920, 180 N.C. 516, 105 S.E. 206; Id., 181 N.C. 66, 106 S.E. 149; Fontaine v. Fontaine, 1931, 205 Wis. 570, 238 N.W. 410; Fitzmaurice v. Fitzmaurice, 1932, 62 N.D. 191, 242 N.W. 526; Rains v. Rains, 1935, 97 Colo. 19, 46 P.2d 740; Katzenberg v. Katzenberg, 1931, 183 Ark. 626, 37 S.W.2d 696. Some of the Courts which still profess adherence to the common law rule have been quite willing to depart from it upon any plausible excuse; 19 Minn.L.Rev. 595 (1935); 35 Col.L.Rev. 781 (1935); 18 Boston U.L.Rev. 196 (1935); Albrecht v. Potthoff, 1934, 192 Minn. 557, 257 N.W. 377, 96 A.L.R. 471, citing Robinson's Adm'r v. Robinson, 188 Ky. 49, 220 S.W. 1074, which holds that under section 241 of the Kentucky Constitution a wife's administrator may sue the husband for the wife's wrongful death for the benefit of the children to the extent they are entitled to recover.

The common law rule originally was based upon the historical fiction of the unity of husband and wife, plus the inability of a person to sue himself. But this concept has been abrogated by the enactment of women's emancipation statutes. Since then courts have seized upon other theories to deny the right. The principal one perhaps is that to permit suits for torts between husband and wife would tend to disturb domestic tranquility and conjugal bliss. Prosser on Torts, § 99, page 903.

Stress has also been placed upon the danger of fictitious and fraudulent claims. See Abbott v. Abbott, 67 Me. 304, 24 Am. Rep. 27, where it was said: "and this would add a new method by which estates could be plundered"; and Newton v. Weber, 119 Misc. 240, 196 N.Y.S. 113, 114, where it was said that no wife would want to sue her husband for a negligent tort except as a "raid upon an insurance company".

The possibility of trivial actions for minor annoyances has also been mentioned as a reason for denying the right to sue. Drake v. Drake, 145 Minn. 388, 177 N.W. 624, 9 A.L.R. 1064. Typical of this line of thought is the dissenting opinion in Wait v. Pierce, 191 Wis. 202, 209 N.W. 475, 210 N.W. 822, 48 A.L.R. 276, where the author uses "the uninvited kiss" as an example of the type of assault for which an unsuspecting husband might be liable if his wife is permitted to sue him for tort.

The minority rule received its greatest impetus from the dissenting opinion of Justice Harlan, concurred in by Justices Holmes and Hughes, in the case of Thompson v. Thompson, 1910, 218 U.S. 611, 31 S. Ct. 111, 114, 54 L.Ed. 1180, 30 L.R.A.,N.S., 1153, 21 Ann.Cas. 921. Their dissent was based squarely on the wording of a District of Columbia married woman's statute which, to our mind, is no broader than our equivalent Kentucky statute. In the words of Mr. Justice Harlan:

"It (the statute) makes a radical change in the relations of man and wife as those relations were at common law in this District"

and

"if, as suggested, that result be undesirable on grounds of public policy, it is not within the functions of the court to ward off the dangers feared or the evils threatened simply by a judicial construction that will defeat the plainly-expressed will of the legislative department. With the mere policy, expediency, or justice of legislation the courts, in our system of government, have no rightful concern. Their duty is only to declare what the law is, not what, in their judgment, it ought to be".

Four years later the doctrine of the dissenting Justices was made the basis of a

direct holding in the Connecticut case of Brown v. Brown, cited above, 88 Conn, 42, 89 A. 889, 52 L.R.A.,N.S., 185, and most of the subsequent cases which follow the minority rule have relied heavily on the dissenting opinion in the Thompson case.

It is said in the case of Courtney v. Courtney, 1938, 184 Okl. 395, 87 P.2d 660, that nine states, in addition to Oklahoma, have adopted the minority rule. They are: *Alabama,* Bennett v. Bennett, 224 Ala. 335, 140 So. 378; *Arkansas,* Katzenberg v. Katzenberg, 183 Ark. 626, 37 S.W.2d 696; *Connecticut,* Kalamian v. Kalamian, 107 Conn. 86, 139 A. 635; *Colorado,* Rains v. Rains, 97 Colo. 19, 46 P.2d 740; *New Hampshire,* Gilman v. Gilman, 78 N.H. 4, 95 A. 657, L.R.A.1916B, 907; *North Carolina,* Roberts v. Roberts, 185 N.C. 566, 118 S.E. 9, 29 A.L.R. 1479; *South Carolina,* Prosser v. Prosser, 114 S.C. 45, 102 S.E. 787; *North Dakota,* Fitzmaurice v. Fitzmaurice, 62 N.D. 191, 242 N.W. 526; and *Wisconsin,* Fontaine v. Fontaine, 205 Wis. 570, 238 N.W. 410. It is also pointed out in the Courtney case that some of the decisions in those states which still follow the common law rule are based on the peculiar wording of the statute in the particular state.

At least five of the states which have adopted the minority rule, as shown by cases cited in the preceding paragaph, have statutes very similar to Kentucky. They are: Arkansas, Colorado, New Hampshire, North Carolina and Wisconsin.

It is also worthy of note that legal writers on this subject, apparently without exception, support the minority rule on the ground that the emancipation statutes and recognition of the right of one spouse to sue the other on contract, as well as in certain other instances, have eliminated the reasons on which the common law rule is based. Prosser on Torts, § 99, page 904, 43 Harv. L.Rev. 1030, 10 Cal.L.Rev. 461, 10 Ind.L. J. 290.

The Kentucky Married Woman's Act appears to be as broad as plain words can make it. But through the years this Court apparently has assumed, without much argument or discussion, that a married

woman cannot sue her husband for a tort against her person. Dishon's Adm'r v. Dishon's Adm'r, 187 Ky. 497, 219 S.W. 794, 13 A.L.R. 625, was a suit for damages by a wife's administrator against the administrator of her husband who had wrongfully caused her death. Although the plaintiff did not rely on the Married Woman's Act, it was stated gratuitously in the opinion that the Act "very clearly was not intended to and does not confer upon either the right to sue the other for tort." In Broaddus v. Wilkenson, 281 Ky. 601, 136 S.W.2d 1052, 1053, the Court permitted recovery by a wife against her husband's employer for injuries caused by the negligence of the husband. Although it was not necessary to the decision, it was said in the opinion: "Neither the husband nor wife could sue the other in tort at common law and this rule has not been abrogated by statute in this jurisdiction and is still in force." Cited as authority were the Dishon case, referred to above, and Louisville & N. Railroad Co. v. Kinman, 182 Ky. 597, 206 S.W. 880, which supports the statement by implication but not by a direct holding. It was also said in the Broaddus opinion that the common law rule of immunity of the husband from suit by his wife is based "upon the ground of public policy of preserving domestic peace and felicity." It was argued by the defendant that the husband, as agent, would be liable in contribution for any recovery by the wife against the principal, and that the wife thereby would be permitted, in effect, to recover against her husband. This would seem to have been a pertinent issue in the case. The argument, however, was brushed aside as an attempt to raise a collateral issue.

If we can accept the language in the Broaddus opinion at face value—and that is the last expression by this Court on the subject—the common law rule has been maintained in this state to promote "domestic peace and felicity." We take it for granted everyone would subscribe to "domestic peace and felicity" as an expression of sound public policy. But a mere statement of the objective does not answer the pertinent question, which is: Does denying a wife the right to file against her

484

husband a meritorious suit for personal injuries against her husband contribute to any appreciable degree to the attainment of this laudable objective?

The argument would have a truer ring except that a wife now may sue her husband for tort affecting her property interest. For instance, she now may sue him for conversion, detention of chattels, fraud, trespass to land, waste, or in actions of ejectment or unlawful detainer. Walker v. Walker, 215 Ky. 154, 284 S.W. 1042. It is difficult to see how an action for personal injuries would disrupt domestic peace and tranquility more than an action for damage to property. But, whether this is so or not, we still are faced with the elementary and, we think, unanswerable proposition that the Legislature has spoken on this subject. It has enunciated the public policy on this subject in this state by saying a married woman may sue and be sued as a single woman. It is not the function of the courts to enunciate a contrary policy.

The fear that relaxation of the common law rule will open the door to fraudulent and fictitious claims, especially against insurance companies, has less force than the argument of "domestic peace and felicity." We are not willing to admit that the courts are so ineffectual, nor our jury system so imperfect, that fraudulent claims cannot be detected and disposed of accordingly.

There is opportunity for fraud in many types of claims which reach the courts, but that does not justify denying the right to maintain those which have merit. This same argument has been advanced against most proposals for changes in our legal procedure, and especially in regard to the emancipation of women. The proclivity of the judicial mind toward pessimism and caution is aptly summarized in the dissenting opinion in Wick v. Wick, 192 Wis. 260, 212 N.W. 787, 788, 52 A.L.R. 1113:

"Courts may prophesy, but the practice often leads them to embarrassment. * * * Every step taken to emancipate women from the rigorous restric-

tions of the common law has been met with dark forebodings on the part of the judiciary. But now that women have been put on a parity with men as to their personal and property rights, society survives, with none of the dark portends of the judicial prophets realized."

Our consideration of the question convinces us that the minority rule is more in keeping with modern thought and the later cases on the subject. Women now hold title to a major part of the nation's wealth. They play decisive roles in the industrial life of the country. They have attained cabinet status in our national government. Thus we may view with no more than historical interest Lord Bacon's statement in his Abridgment, Title Baron and Femme B., that: "The husband hath by law, power and dominion over his wife, and may keep her by force within the bounds of duty, and may beat her, but not in a violent or cruel manner." And only the more hardy among legal writers have the temerity to quote the statement even for that purpose.

The appellant relies strongly on the principle of stare decisis to maintain his position that the common law rule still exists undisturbed in Kentucky. It must be admitted that stare decisis supports his position, but it seems to us the words of Mr. Justice Brandeis in State of Washington v. W. C. Dawson & Co., 264 U.S. 219, 44 S.Ct. 302, 309, 68 L.Ed. 646, are applicable here:

"Stare decisis is ordinarily a wise rule of action. But it is not a universal, inexorable command. The instances in which the court has disregarded its admonition are many."

To the extent that the cases of Dishon's Adm'r v. Dishon's Adm'r, Broaddus v. Wilkenson, and other cases of similar import, are in conflict with the views here expressed, they are now overruled.

The judgment is affirmed.

SIMS, C. J., and STEWART, J., dissenting.

SIMS, Chief Justice (dissenting).

The opinion is so far reaching and is so contrary to my view of the law that I feel impelled to write this dissent.

The majority opinion, as well as the opinion of the learned trial judge, is exceedingly well written, and the only criticism I have is that the conclusion reached is wrong. To the credit of the author of the majority opinion, he has given every argument which could be raised against the affirmance of the trial judge, thus he has in reality written this dissent.

One reading the opinion of the majority can readily understand the reason for this dissent is that to permit one spouse to sue the other for a tort produces these undesirable results: 1. It brings about domestic discord; 2. it encourages raids on insurance companies through unmeritorious claims which would never be instituted where the husband did not carry liability insurance, thus possibly raising insurance rates on thousands of honest persons for the benefit of the fraudulent few; 3. it adopts the minority rule and aligns this court on the side which is against the great weight of authority in the nation; 4. it necessitates the overruling of two cases, one of long standing and the other of comparatively recent date.

To my mind neither the Married Woman's Act, KRS 404.020, nor § 34 of the Civil Code of Practice authorizes the wife to sue her husband for his neligence—neither spouse was authorized at common law to sue the other for negligence.

For the reasons given, I respectfully dissent, and am authorized to state that Judge STEWART joins me.