RENDERED: APRIL 8, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0624-MR

BRENDA POWELL, INDIVIDUALLY;
BRENDA POWELL, AS COURT-
APPOINTED ADMINISTRATRIX OF
THE ESTATE OF JOSHUA DEE
POWELL; AND BRENDA POWELL,
AS NEXT FRIEND OF THE MINOR,
WILLIAM POWELL                                             APPELLANTS


                    APPEAL FROM CLARK CIRCUIT COURT
v.          HONORABLE JEAN CHENAULT LOGUE, JUDGE
                        ACTION NO. 16-CI-00576


KENTUCKY HOSPITAL, LLC D/B/A
CLARK REGIONAL MEDICAL
CENTER; DR. HARJOT DULAI;
DYNAMIC IMAGING ASSOCIATES,
LLC; AND FOUNDATION
RADIOLOGY GROUP, PC                                          APPELLEES


                            OPINION
                            AFFIRMING

                        ** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND GOODWINE,
JUDGES.

GOODWINE, JUDGE: Brenda Powell, individually, as next friend of William Powell, and as administratrix of the estate of Joshua Dee Powell, appeals from the summary judgment granted by the Clark Circuit Court in favor of Kentucky Hospital, LLC d/b/a Clark Regional Medical Center ("Clark Regional").[1] The trial court determined Brenda could not prevail on her claim of vicarious liability where Dr. Harjot Dulai ("Dr. Dulai"), a radiologist, was an independent contractor and Clark Regional gave adequate notice of this relationship to Brenda. She further appeals the trial court's denial of her motion to file a third amended complaint. Finding no error, we affirm.

## BACKGROUND

On February 12, 2016, Joshua and Brenda, his wife, went to Clark Regional's emergency department. Joshua complained of ongoing abdominal pain and cramping. He was treated by Dr. Jean-Bernard Poirier ("Dr. Poirier") who ordered abdominal and pelvic CT scans. The CT scans were then interpreted remotely by Dr. Dulai to be colitis. Based on the results of the CT scans, Dr. Poirier discharged Joshua with prescriptions for antibiotics and pain medication. He instructed Joshua to return to Clark Regional if his condition worsened.

---

[1] Because the Powells share a surname, we will refer to them as "Brenda" and "Joshua" throughout this Opinion for clarity.

After returning home, Joshua began vomiting in the early morning hours of February 13, 2016. Later that day, he was transported by ambulance to Clark Regional. At that time, he was diagnosed with a perforated colon and, as a result, septic shock. Approximately two weeks later, after a related reconstructive surgery, Joshua passed away due to cardiac arrest.

On December 22, 2016, Brenda brought suit against Clark Regional and Dr. Dulai, among others. She claimed Dr. Dulai was negligent because he failed to diagnose Joshua's perforated colon from the CT scans on February 12, 2016. She further claimed Clark Regional was vicariously liable for Dr. Dulai's alleged negligence because he was either an actual or ostensible agent of the hospital.

Clark Regional contracted with Foundation Radiology Group ("Foundation") for its radiological services.[2] Foundation, in turn, contracted with Dynamic Imaging, LLC ("Dynamic Imaging") for these services. Dr. Dulai was a partner in Dynamic Imaging. He did not reside in Kentucky, but instead, performed radiological services for Clark Regional remotely from his home office in California. Foundation provided Dr. Dulai with the equipment necessary to perform his duties and controlled his work schedule.

---

[2] Under the contract, Foundation provided an on-site radiologist, Dr. McQuaide, during business hours. After hours, Foundation radiologists, like Dr. Dulai, provided services remotely.

Clark Regional's contract with Foundation describes the relationship between the parties as follows:

> It is expressly acknowledged by the Parties hereto that the Foundation Parties are independent contractors and nothing in this Agreement is intended nor shall be construed to create an employer/employee relationship, a joint venture relationship, or a lease or landlord/tenant relationship, nor does this Agreement allow [Clark Regional] to exercise control or direction over the manner or method by which Contractor or Specialists perform the Specialist Services which are the subject matter of this Agreement; provided that the Specialist Services and Administrative Services shall be provided hereunder in a manner consistent with applicable standards governing such services and the provisions of this Agreement.

Record ("R.") at 1080-99.[3] In his deposition, Dr. Dulai stated he was not and had never been an employee of Clark Regional and never held himself out as such to Brenda, Joshua, or any other patient.[4] He also reported using his independent medical judgment to interpret Joshua's CT scans.

In her deposition, Brenda confirmed she signed a consent for services and financial responsibility form on Joshua's behalf when they presented at Clark Regional on February 12, 2016. Paragraph 10 of the consent form described the relationship between the hospital and physicians as follows:

---

[3] The contract is not paginated in the record but is attached as Exhibit 6 to Plaintiffs' Response to Defendant's Motion for Summary Judgment.

[4] Dr. Dulai had no direct contact with Brenda or Joshua.

RELATIONSHIP BETWEEN HOSPITAL AND PHYSICIANS/OTHER HEALTH CARE PROVIDERS: I understand that: Most or all of the health care providers performing services in this Hospital are independent contractors and are not Hospital employees, representatives, or agents. Most physicians and surgeons providing services to me, including the radiologist, pathologist, emergency physician, anesthesiologist, hospitalist, and others are independent contractors and are not employees, representatives, or agents of this hospital. Likewise, most physician assistants (P.A.'s), Nurse Practioners (N.P.'s), and Certified Registered Nurse Anesthetists (C.R.N.A.'s) are independent contractors and are not employees, representatives, or agents of the hospitals. Independent contractors are responsible for their own actions and the Hospital shall not be liable for the acts or omissions of any such independent contractors.

*Id*.[5] Brenda initialed this section. The form further states, "I have read and fully understand this Patient Consent and Financial Agreement and been given the opportunity to ask questions. I acknowledge that I either have no questions or that my questions have been answered to my satisfaction." *Id*. In her deposition, Brenda confirmed that, despite choosing not to read the form in its entirety, she read Paragraph 10. She also admitted she was given adequate time to review the form and a nurse explained it to her as needed.

In 2017, the trial court allowed Brenda to amend her complaint twice. Discovery continued and, on October 4, 2019, Brenda filed a motion to file a third

---

[5] The consent form is not paginated in the record but is attached as Exhibit 9 to Plaintiffs' Response to Defendant's Motion for Summary Judgment.

amended complaint to bring claims of corporate negligence and breach of contract against Clark Regional. Clark Regional objected to the motion and moved for summary judgment on November 22, 2019. The trial court passed both motions and ordered Clark Regional to produce answers or documents with regard to the contracts between Clark Regional and Foundation, as well as allocations made in the hospital's "cost report" to radiology services related to February 12, 2016, and whether the report reflected any compensation to Dr. Dulai.[6] Thereafter, Clark Regional produced the cost report.

Clark Regional renewed its motion for summary judgment. The trial court granted the motion and denied Brenda's motion to amend the complaint. Considering the evidence in the light most favorable to Brenda, the court reasoned that Clark Regional was not vicariously liable because Dr. Dulai was neither an actual or ostensible agent of the hospital. The trial court subsequently denied Brenda's motion to alter, amend, or vacate the summary judgment. This appeal followed.

---

[6] The "cost report" is CMS 2552-10, a form Clark Regional is required to file with the Centers for Medicare and Medicaid Services ("CMS") wherein the hospital reports the cost of various services.

# STANDARD OF REVIEW

Summary judgment is proper only where, "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Isaacs v. Sentinal Insurance Company Limited*, 607 S.W.3d 678, 680 (Ky. 2020) (citation omitted). Furthermore, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[7] 56.03.

"The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citations omitted). Even where the trial court does not believe the respondent will succeed at trial, if there is an issue of fact, the matter must be allowed to proceed. *Id.* (citation omitted).

"Because summary judgment[] involve[s] no fact finding, this Court will review the [trial] court's decision *de novo*." *Isaacs*, 607 S.W.3d at 681 (citation omitted).

---

[7] Kentucky Rules of Civil Procedure.

## ANALYSIS

On appeal, Brenda argues: (1) the trial court erred in granting summary judgment on her claim that Clark Regional was vicariously liable for Dr. Dulai's actions; and (2) the trial court abused its discretion in denying her motion to file a third amended complaint.

We will first consider Brenda's argument that the trial court granted summary judgment on her claim of vicarious liability in error. Within this argument, Brenda contends the following issues of material fact exist: (1) whether Dr. Dulai was an actual agent of Clark Regional; or, in the alternative, (2) whether Clark Regional provided adequate notice to patients of Dr. Dulai's status as an independent contractor.

Dr. Dulai was not an agent of Clark Regional. Actual agency exists where "[t]here has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act." *Kindred Nursing Centers Ltd. Partnership v. Brown*, 411 S.W.3d 242, 249 (Ky. App. 2011) (citation omitted). "Under Kentucky law, the right to control is considered the most critical element in determining whether an agency relationship exists." *CSX Transportation, Inc. v. First National Bank of Grayson*, 14 S.W.3d 563, 566-67 (Ky. App. 1999) (citation omitted).

> A principal may be held vicariously liable for the negligent acts of his or her agent, but generally is not held liable for

the conduct of an independent contractor. . . . An individual is the agent of another if the principal has the power or responsibility to control the method, manner, and details of the agent's work. . . . If, however, an individual is free to determine how work is done and the principal cares only about the end result, then that individual is an independent contractor.

*Nazar v. Branham*, 291 S.W.3d 599, 606-07 (Ky. 2009) (citation omitted).

Brenda's argument that Dr. Dulai was Clark Regional's agent primarily relies on the hospital's cost report. Under its contract with Clark Regional, Foundation provides all radiological services for the hospital and bills independently for those services. However, Brenda claims, within the cost report, Clark Regional reports physician salaries paid and billing for radiology services. Specifically, Brenda alleges Clark Regional reported paying approximately $64,000 to a physician in its radiology department. While the form does appear to include that amount in a salary paid to a radiologist, the form does not identify the physician. However, during her deposition, Samantha Patrick ("Patrick"), Clark Regional's CR 30.02 representative, testified the hospital made no payments to Dr. Dulai. Therefore, the cost report creates no issue of material fact.

Furthermore, despite Brenda's claim that Clark Regional's actions rendered discovery unproductive, Dr. Dulai's status as an independent contractor is clear. Clark Regional did not pay Dr. Dulai a salary. The hospital did not provide Dr. Dulai any office space or equipment, manage his schedule, or control the

-9-

manner in which he completed his work. Clark Regional cared only about the result of Dr. Dulai's work. *See Nazar*, 291 S.W.3d at 606-07 (citation omitted).

Next, Clark Regional gave notice of its use of independent contractors, including radiologists, to patients, creating no issue of material fact as to ostensible agency. "An apparent or ostensible agent is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him." *Sneed v. University of Louisville Hospital*, 600 S.W.3d 221, 232 (Ky. 2020) (citing *Paintsville Hospital Company v. Rose*, 683 S.W.2d 255, 257 (Ky. 1985)). Because it is unreasonable to place the burden on the patient to determine whether the physician treating them is an employee or independent contractor of the hospital, the patient may assume the physician is an employee "absent notice to the contrary." *Id.* Notice of the physician's status as an independent contractor requires the hospital to "clearly attempt[] to alert its patients that the physicians who provided treatment . . . were not employees of the [h]ospital." *Id.* at 233.

Brenda concedes she received, reviewed, and signed the consent form when she and Joshua presented at the emergency department. She also admits a nurse explained the form to her and was available to answer her questions. Paragraph 10 makes clear that independent contractors, including radiologists,

-10-

provide services at Clark Regional and that those individuals are not employees or agents of the hospital. Brenda confirmed that she fully understood the consent form. There is no question that Clark Regional clearly attempted to inform patients, including Joshua and Brenda, of their use of independent contractors.

No genuine issue of material fact exists as to Brenda's claim of Clark Regional's vicarious liability. Because Brenda could not prevail on this issue, summary judgment was appropriate.

Relatedly, Brenda briefly argues summary judgment was improper because Clark Regional did not prove she had the authority to sign the informed consent form on Joshua's behalf. She cites to no authority in support of this argument. Without support, conclusory statements are insufficient basis upon which this Court can grant relief. *Jones v. Livesay*, 551 S.W.3d 47, 52 (Ky. App. 2018). Therefore, we will not address this claim.

Finally, Brenda alleges the trial court erred by denying her motion to file a third amended complaint. After the time for a responsive pleading has elapsed or if no responsive pleading is permitted, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." CR 15.01. Although the rule requires leave be given when justice so requires, the decision remains within the trial court's discretion and a ruling will not be disturbed unless it is clearly an abuse of

discretion.  *Nichols v. Zurich American Ins. Co.*, 423 S.W.3d 698, 707 (Ky. 2014) (citing *Laneve v. Standard Oil Co.*, 479 S.W.2d 6, 8 (Ky. 1972)).

In her third amended complaint, Brenda alleges no facts which were not known or available to her well before she filed her motion to amend.  At the time the trial court denied Brenda's motion, this matter had been pending and discovery had been ongoing for approximately four years.  The new claims raised in the third amended complaint are based on circumstances of which Brenda had knowledge long before her request.  On this basis, the trial court's denial was not an abuse of discretion.  *See Underhill v. Stephenson*, 756 S.W.2d 459, 460-61 (Ky. 1988); *see also Floyd v. Humana of Virginia, Inc.*, 787 S.W.2d 267, 269 (Ky. App. 1989).

## CONCLUSION

Based on the foregoing, the summary judgment of the Clark Circuit Court is affirmed.

CLAYTON, CHIEF JUDGE, CONCURS.

CETRULO, JUDGE, CONCURS IN RESULT AND FILES SEPARATE OPINION.

CETRULO, JUDGE, CONCURRING:  I concur with the result reached by the majority in its Opinion but write separately to express some concerns that the "notice" in this case is not so clear as the notice of use of independent contractors upheld by the Supreme Court in *Sneed v. University of*

*Louisville Hospital*, 600 S.W.3d 221 (Ky. 2020). Moreover, there was no evidence that Joshua, the patient, had knowledge of the use of independent contractors, as only Brenda signed the informed consent form. That being said, however, I do not believe the trial court clearly erred in finding that summary judgment was proper. The trial court in this case certainly did not rush to summary judgment as the matter had been pending for nearly four years. There was no evidence presented, despite considerable discovery, that Dr. Dulai was an agent of Clark Regional. In fact, the evidence established that he was not. Furthermore, despite years of discovery and identification of experts, there was no expert opinion presented to support a continuation of the claims against Clark Regional. For those reasons, I agree with the majority Opinion affirming the Clark Circuit Court.

BRIEFS FOR APPELLANT:

J. Dale Golden
Laraclay Parker
Alexandra DeMoss-Campbell
Lexington, Kentucky

BRIEF FOR APPELLEE:

B. Todd Thompson
Eleanor M.B. Davis
Chad O. Propst
Louisville, Kentucky